# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JERKYLE LAWRENCE, et al.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 16-994** |
| **NEW INDUSTRIES, LLC** | **JUDGE: NJB** |

## ORDER

In this litigation, Plaintiffs, individuals who were employed as laborers by Defendant New Industries, LLC ("Defendant"), allege that Defendant did not pay overtime wages or minimum wages in violation of the Fair Labor Standards Act ("FLSA").[1] Plaintiffs also allege that Defendant violated Louisiana Revised Statute § 23:1163(A) by requiring employees to contribute $1 for every hour worked into a pool of money called the "safety pool," which Plaintiffs allege Defendant used to satisfy workers' compensation obligations.[2] Pending before the Court is Defendant's "Motion for Discovery Sanctions Pursuant to FRCP Rule 37" in which Defendant argues that Plaintiff Arthur Thompson's ("Thompson") claims should be dismissed and his testimony stricken from the record because he did not appear for his deposition and did not respond to contact from counsel.[3] Having considered the motion, the memoranda in support, the record, and the applicable law, the Court will grant the motion as it pertains to the dismissal of Plaintiff Thompson's claims.

---

[1] Rec. Docs. 1, 27.

[2] Rec. Doc. 27.

[3] Rec. Doc. 62.

# I. Background

## A. *Factual Background*

Defendant is a corporation based in Morgan City, Louisiana, engaged in the business of providing steel fabrication services to the oil and gas and marine industries, and Plaintiffs are laborers who were employed by Defendant.[4] Plaintiffs allege that Defendant violated the minimum wage and overtime provisions of the FLSA.[5] In the Amended Complaint, Plaintiffs seek to recover unpaid wages on behalf of themselves and any opt-in plaintiffs who worked for Defendant for the preceding three years.[6]

According to the Amended Complaint, Defendant requires that Plaintiffs be ready for work at 6:00 a.m., when Defendant's jobsite whistle blew.[7] Plaintiffs allege that the nature of their jobs required them to perform tasks and other work before the 6:00 a.m. whistle.[8] Specifically, Plaintiffs assert that Defendant required its laborers to clock into work between 5:30 and 5:45 a.m. to change clothes, put on personal protective equipment ("PPE"), and gather their tools.[9] Plaintiffs allege that a safety meeting took place at 6:00 a.m. each day when the whistle blew, which signified that Defendant would begin payment to its laborers.[10]

---

[4] Rec. Doc. 27 at 2–4.

[5] *Id.* at 1.

[6] *Id.* at 7.

[7] *Id.* at 4.

[8] *Id.*

[9] *Id.* at 5.

[10] *Id.*

To signify the end of the workday, Plaintiffs contend that a whistle would blow, and Defendant would stop payment to its laborers.[11] However, Plaintiffs allege that they were still required to perform work while not on the clock including putting away tools, returning PPE clothing, and walking to their time card station to clock out.[12]

At a minimum, Plaintiffs assert that Defendant did not pay them for 30 minutes each day.[13] Plaintiffs also allege that they often worked more than 40 hours per week, and Defendant did not pay "Plaintiffs one-and-half times their hourly rate for all hours they worked outside the whistles."[14] Plaintiffs contend that "Defendant willfully violated Plaintiffs' rights under the FLSA because Defendant knew or showed reckless disregard for the fact that its compensation practices violated the FLSA."[15]

Plaintiffs also allege that at the beginning of each year Defendant contributes $100,000 to a fund referred to as the "safety pool."[16] According to the Amended Complaint, Plaintiffs were required to pay one dollar for every hour worked toward the safety pool.[17] Plaintiffs allege that the safety pool was used to pay for workers' compensation claims made against Defendant.[18] Plaintiffs

---

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.* at 6.

[17] *Id.*

[18] *Id.*

contend that the safety pool was also used by Defendant to pay for miscellaneous expenses including personal expenses of William New, Defendant's executive.[19] According to the Amended Complaint, each business quarter Defendant disburses a percentage of the safety pool to its employees, but employees do not receive back 100 percent of their contributions due to various deductions made.[20] Plaintiffs contend that the safety pool violates Louisiana Revised Statute § 23:1163, which prohibits an employer from deducting from its employees' wages the amount of employer pays for workers' compensation obligations.[21] Additionally, Plaintiffs assert that "the safety pool system engenders hazardous and unjust working conditions by encouraging workers to exert peer pressure over victims of work accidents to not make claims against the safety pool."[22] Plaintiffs also bring a revendicatory action pursuant to Louisiana Civil Code article 526 to recover all money divested by Defendant, and an unjust enrichment claim to recover all money paid into the safety pool.[23]

**B.     *Procedural Background***

Named Plaintiffs Jerkyle Lawrence and Alvin Griffin filed a Collective Action Complaint on July 6, 2016, against Defendant alleging violations of the minimum wage and overtime provisions of the FLSA.[24] This matter was initially assigned to United States District Judge

---

[19] *Id.*

[20] *Id.*

[21] *Id.* at 8.

[22] *Id.* at 6.

[23] *Id.* at 10–11.

[24] Rec. Doc. 1 at 1.

4

Rebecca F. Doherty. On April 10, 2017, the parties filed a joint motion for conditional certification of a collective action under the FLSA.[25] On April 11, 2017, the Court conditionally certified a class of "[c]urrent and former employees of New Industries, LLC who were employed at any time from April 1, 2014 through the present date and who were employed in the following job positions: welder, machine operator, fitter, crane operator, forklift operator, rigger, carpenter, tacker or helper."[26] 15 individuals joined the class.[27]

With leave of Court, on August 29, 2017, Plaintiffs filed an Amended Complaint, adding claims under Louisiana law regarding the safety pool.[28] On December 21, 2017, the Court joined Plaintiff's state law claims in the class action with the FLSA claims.[29]

On July 26, 2018, the case was reassigned to the undersigned Chief United States District Judge.[30] On February 19, 2019, Defendant filed a motion for summary judgment.[31] On March 12, 2019, Plaintiffs Alvin Griffin, Arthur Thompson, Stanley King, Norman Lightfoot, Kevin Jennings and Ray Aucoin filed an opposition to the motion for summary judgment.[32] The remaining

---

[25] Rec. Doc. 9.

[26] Rec. Doc. 10.

[27] Rec. Docs. 12–24.

[28] Rec. Doc. 19.

[29] Rec. Doc. 41.

[30] Rec. Doc. 47.

[31] Rec. Doc. 62.

[32] Rec. Doc. 64.

plaintiffs did not oppose the motion for summary judgment.[33] On April 24, 2019, Defendant filed the instant motion for sanctions, arguing that Plaintiff Thompson's claims should be dismissed and his testimony stricken from the record because he did not appear for his deposition and did not respond to contact from counsel.[34] Pursuant to Local Rule 7.5, opposition was due within 21 days after service of the motion.[35] Plaintiffs did not file an opposition to the instant motion, timely or otherwise. This Court has authority to grant a motion as unopposed, although it is not required to do so.[36]

## II. Parties' Arguments

### A. *Defendant's Arguments in Support of the Motion for Sanctions*

In the instant motion, Defendant states that Thompson failed to appear via telephone for a scheduled deposition for which he was properly noticed.[37] Further, Defendant argues that Thompson was non-responsive to counsel's communication, even though the deposition had been previously rescheduled at Thompson's request.[38]

Defendant argues that the Court has "broad" discretion under Federal Rule of Civil Procedure 37 to impose sanctions related to Thompson's failure to appear for his deposition.[39]

---

[33] *Id.*

[34] Rec. Doc. 77 at 1.

[35] Rec. Doc. 78.

[36] Rec. Doc. 1-2.

[37] *Id.* at 1–2.

[38] *Id.*

[39] Rec. Doc. 77-2 at 5

Defendant argues that the Court should dismiss Thompson's claims without prejudice as a result of his failure to cooperate in discovery and appear for his scheduled deposition.[40] Defendant argues that courts within the Fifth Circuit have held dismissal of claims are an appropriate sanction for failure to appear at a deposition, especially when an aggravating factor exists, such as: "(1) delay caused by [the] plaintiff himself and not his attorney; (2) actual prejudice to the defendant; or (3) delay caused by intentional conduct."[41] Defendant states that here, Thompson's failed to appear and remained unresponsiveness, despite his own counsel's attempts to contact him.[42] Further, Defendant argues that it has been prejudiced by Thompson's delay because trial is quickly approaching and his sworn declaration is inconsistent with the testimony of other witnesses and other written discovery.[43]

Additionally, or alternatively, Defendant requests that the Court strike and not consider Thompson's Sworn Declaration submitted in opposition to Defendant's pending Motion for Summary Judgment.[44] As another alternative, Defendant requests that Thompson be compelled to appear at defense counsel's offices for his deposition within 30 days.[45]

### B. *Plaintiffs' Arguments in Opposition to the Motion for Sanctions*

---

[40] *Id*. at 2.

[41] *Id.* at 5–6 (citing *Jones v. Steel Fabricators of Monroe LLC*, 2015 WL 9699303, at *2 (W.D. La. 2015), report and recomm. adopted, 2016 WL 154134 (W.D. La. 2016)).

[42] *Id.* at 6.

[43] *Id*. at 6–7.

[44] *Id.*

[45] *Id.*

7

Plaintiffs did not file an opposition to the instant motion.

### **III. Legal Standard**

Pursuant to Federal Rule of Civil Procedure 37(b)(2)(A), where an action is pending a court may, on motion, order sanctions if a "party . . . fails to obey an order to provide or permit discovery . . . ." Rule 37(b)(2)(A) also sets forth the types of sanctions a court may impose.[46] Possible sanctions are listed in Rule 37(b)(2)(A)(i)-(vii) and include:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii) striking pleadings in whole or in part;
>
> (iv) staying further proceedings until the order is obeyed;
>
> (v) dismissing the action or proceeding in whole or in part;
>
> (vi) rendering a default judgment against the disobedient party; or
>
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

"Rule 37(b)(A)(v) expressly contemplates dismissal, and the district court's discretion thereunder is broad."[47] Rule 37 does not specify whether dismissal is presumed with or without prejudice, but courts have cautioned that the use of dismissal "must be tempered by a careful exercise of judicial discretion" because it is "the most severe sanction that a court may apply."[48]

---

[46] Fed. R. Civ. P. 37(b)(2)(A)(i)–(vii).

[47] *Moore v. CITGO Ref'g & Chem. Co.*, 735 F.3d 309, 316 (5th Cir. 2013).

[48] *Durgin v. Graham*, 372 F.2d 130, 131 (5th Cir. 1967) (finding the sanction of dismissal warranted where

8

Dismissal with prejudice "should be reserved for the most egregious of cases."[49] Dismissal as a sanction generally requires that "the failure to comply with the court's order results from wilfulness [sic] or bad faith, and not from an inability to comply."[50] When considering dismissal as a sanction under Rule 37, the court also considers additional aggravating factors such as whether the other party's trial preparation was substantially prejudiced, whether the conduct is attributable directly to the plaintiff, rather than the attorney, and whether the delay was "grounded in confusion or sincere misunderstanding of the court's orders."[51]

### IV. Analysis

In the instant motion, Defendant states that Thompson failed to appear via telephone for a scheduled deposition for which he was properly noticed.[52] Further, Defendant argues that Thompson was non-responsive to counsel's communication, even though the deposition had been previously rescheduled at Thompson's request.[53] Plaintiffs did not file an opposition to the instant motion.

By failing to participate in a properly noticed deposition, Thompson has failed to comply with this Court's scheduling order, which states that depositions for trial shall be taken no later

---

plaintiffs never appeared).

[49] *Rogers v. Kroger Co.*, 669 F.2d 317, 320 (5th Cir. 1982); *see also*, 9 C. Wright & A. Miller, Federal Practice & Procedure § 2364 (3d ed. 2002).

[50] *Batson v. Neal Spelce Assocs.*, 765 F.2d 511, 514 (5th Cir. 1985).

[51] *Id.*

[52] Rec. Doc. 77 at 1–2.

[53] *Id.*

9

than April 24, 2019.[54] Opposing counsel has worked to accommodate Thompson, as it previously rescheduled his telephone deposition, originally set for April 22, 2019 to April 23, 2019.[55] Thompson has provided no explanation for his failure to participate and has provided no opposition to the instant motion. The Court has no indication that Thompson was unable to comply with the scheduling order and appear for the deposition. In fact, Thompson had previously requested that the deposition be rescheduled to fit his schedule.[56]

Further, the Court finds that aggravating factors exist. First, Thompson's failure to comply prejudices Defendant at this late stage in the proceeding as all depositions were to be completed by April 24, 2019 and trial is set for June 24, 2019. Second, Thompson's failure to appear is directly attributable to him, not his counsel, as he was properly noticed and his counsel was unable to contact him at the scheduled time for the deposition.[57] Third, there is no indication that the delay was based on confusion or misunderstanding, as Thompson had previously requested that the parties move the deposition to fit his schedule.[58]

Defendant requests that Thompson's claims be dismissed without prejudice, or strike Thompson's declaration from the record, or order Thompson to appear for a deposition within 30

---

[54] See Rec. Doc. 49.

[55] Rec. Doc. 77 at 1.

[56] *See id.*

[57] *See id* at 1–2.

[58] *See id.*

days.[59] The Court has "broad" discretion to grant dismissal under Rule 37.[60] However, courts have cautioned that the use of dismissal "must be tempered by a careful exercise of judicial discretion" because it is "the most severe sanction that a court may apply."[61] The Fifth Circuit has found that dismissal is most appropriate where aggravating factors exist.[62] Here, the Court finds that aggravating factors exist based on the prejudice to Defendant at this late stage in the proceeding and Thompson's personal failure to comply with the order without providing any explanation for his failure to comply. Therefore, the Court finds that dismissal of Thompson's claims is appropriate at this time. However, as dismissal is a harsh remedy, the Court will grant dismissal without prejudice.

### V. Conclusion

Based on the foregoing, the Court finds that sanctions are appropriate pursuant to Rule 37 because Thompson failed to appear for a noticed deposition. The Court will dismiss Plaintiff Thompson's claims without prejudice as Plaintiff Thompson has provided no explanation or opposition to the instant motion, is personally responsible for his failure to appear, and has prejudiced Defendant at this late stage in the proceeding. Accordingly,

---

[59] *Id.* at 2.

[60] *Moore v. CITGO Ref'g & Chem. Co.*, 735 F.3d 309, 316 (5th Cir. 2013).

[61] *Durgin v. Graham*, 372 F.2d 130, 131 (5th Cir. 1967) (finding the sanction of dismissal warranted where plaintiffs never appeared).

[62] *Batson,* 765 F.2d at 514.

**IT IS HEREBY ORDERED** that Defendant's "Motion for Discovery Sanctions Pursuant to FRCP Rule 37"[63] is **GRANTED**. Plaintiff Arthur Thompson's claims are **DISMISSED WITHOUT PREJUDICE.**

**NEW ORLEANS, LOUISIANA** this  5th  day of June, 2017.

                                                    **NANNETTE JOLIVETTE BROWN**
                                                  **CHIEF JUDGE**
                                                  **UNITED STATES DISTRICT COURT**

---

[63] Rec. Doc. 77.